Vincent J. Foley
Clayton J. Vignocchi
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fax: (212) 385-9010
vincent.foley@hklaw.com
clayton.vignocchi@hklaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCEAN WORLD LINES, INC.<br><br>               Petitioner,<br><br>- against -<br><br>TRANSOCEAN SHIPPING TRANSPORTAGENTUR GESMBH,<br><br>               Respondent. | 18 Civ. _____ (____)<br><br>**VERIFIED PETITION TO**<br>**CONFIRM ARBITRATION AWARD** |

Petitioner, Ocean World Lines, Inc., ("Petitioner" or "OWL"), by and through its attorneys, Holland & Knight, LLP, respectfully alleges as follows:

1.     This Court has subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, specifically, 9 U.S.C. § 203, and the Declaratory Judgement Act, 22 U.S.C. § 2201.

2.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of citizenship because this matter consists of a dispute between a New York corporation and a foreign corporation for an amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

3. This Court also has supplemental jurisdiction under 28 U.S.C. §1367 to issue orders to enforce and protect its jurisdiction to confirm an arbitration award obtained in this District, and to enjoin a party from seeking to undermine or invalidate a judgment of this Court.

4. Ocean World Lines, Inc. is a company organized under the laws of New York with a principal place of business at 6805 Perimeter Drive, Dublin Ohio 43016.

5. Upon information and belief, Transocean Shipping Transportagentur GesmbH ("Respondent" or "TOS") is a foreign corporation organized and existing under the laws of Austria with its principal place of business at Altmannsdorferstrasse 91/DG/23 B, 1120 Vienna Austria.

6. Petitioner brings this action seeking an order confirming the arbitration award obtained by OWL against TOS dated January 4, 2016 (the "Final Award"), and directing that judgment be entered in accordance with the Final Award. Petitioner further requests an order enjoining TOS from seeking recognition or enforcement of the inconsistent foreign judgment obtained from the courts of Austria dated June 29, 2018 in derogation of the existing Final Award rendered in this District.

7. Venue here is proper pursuant to 9 U.S.C. § 204 in that the Final Award was obtained in this District pursuant to the parties' agreement to arbitrate disputes in New York and according to the Rules of the Society of Maritime Arbitrators, Inc. ("SMA").

8. TOS is subject to jurisdiction by its agreement to arbitrate this dispute in New York and has agreed to service of process pursuant to SMA Rule 35, which provides:

> Wherever parties have agreed to arbitration under these Rules, they shall be deemed to have consented to service of any papers, notices or process necessary to initiate or continue an arbitration under these Rules or a court action to confirm judgment on the Award issued. Such documents may be served: (a) By mail addressed to such party or counsel at their last known address; or (b) By personal service.

**Factual Background**

9. In 2009, OWL executed a commercial agency agreement with TOS, which was back-dated to January 1, 2005 (the "Agency Agreement").

10. The Agency Agreement required at Clause 5 that TOS make timely payments, with no balances past due sixty (60) days, and make good faith efforts to reconcile and settle any outstanding payments. Specifically, it stated:

Clause 5: Settlement.

Settlement of all transactions should be done monthly for all transactions completed during the month. Transfer of funds to be done via wire to the bank details specified in Appendix 1. Accounts to be maintained with no balances past due 60 days. Settlement information to be provided using a MS Excel worksheet. Upon verification and confirmation of the statement accounts by both Parties, remittances shall be wire transferred to the bank detailed in Appendix 1. Such remittances will be wire transferred before the 15th day of the following month if the settlement amount exceeds US $1,000. If the settlement amount is under US $1,000, the settlement will be carried forward to the following month. The payment of air shipment should be settled no later than 15 days after the cargo departure. The Parties will resolve discrepancies with each other amicably and in good faith. Both Parties will be responsible for bank charges occurred locally.

11. The Agency Agreement required that arbitration take place in New York and that the Agreement shall be governed by and interpreted in accordance with the laws of the state of New York. Specifically, the Agency Agreement provided as follows:

Clause 16: Choice of Law and Jurisdiction.

This Agreement shall be governed by and interpreted in accordance with the laws of the state of New York, disregarding any conflict of law rules that may direct the application of the laws of another jurisdiction. All claims or actions under this Agreement shall be resolved by arbitration in New York, NY, or such other place as the Parties may mutually agree pursuant to the rules and procedures of the Society of Maritime Arbitrators. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the Parties otherwise, there shall be no pre-hearing discovery. The decision of the arbitrator shall be final, binding, and not subject to further review. In all other respects, the procedural rules of the Society of Maritime Arbitrators shall govern the conduct of the arbitration;

provided, however, that if the procedural rules of the Society of Maritime Arbitrators do not contain a provision applicable to a given procedural issue, then the laws of the State of New York shall govern. Any court, tribunal or other forum as may properly assert jurisdiction may enforce the decision of the arbitrator.

12. In and during 2012, TOS materially breached the Agency Agreement by *inter alia* failing to pay outstanding balances within sixty (60) days as required by Clause 5. Despite repeated demands from OWL to TOS for payment of the outstanding amounts, TOS failed to comply with its obligations under the Agency Agreement.

13. At some point in July or August of 2012, after numerous exchanges, the parties arrived at an impasse in the reconciliation process, and TOS advised OWL by email that TOS would stop payments to OWL until the outstanding balances were confirmed and agreed.

14. By email dated November 11, 2012, OWL demanded that TOS remit the outstanding amounts due under the Agency Agreement, failing which OWL would terminate the Agency Agreement. TOS did not respond with payment or any communication.

15. On November 30, 2012, OWL terminated the Agency Agreement for *inter alia* TOS's failure to make timely payments pursuant to Clause 5.

### The New York Arbitration and Final Award in favor of OWL

16. OWL commenced arbitration in December 2012 pursuant to Clause 16 of the Agency Agreement, and demanded arbitration in New York. After some initial resistance to appointing an arbitrator, TOS appointed David Loh as arbitrator. OWL appointed John Devine. On June 1, 2013, Manfred Arnold accepted the appointment as third arbitrator and chairman for procedural matters (the "Panel").

17. TOS immediately raised questions as to the validity of the Agency Agreement and the effects of Austrian law. The parties agreed that the panel should rule on the threshold

questions of whether: (1) a binding and enforceable agreement was ever entered between OWL and TOS; (2) the arbitration clause by itself was binding and enforceable, and (3) as a choice of law question, whether New York law or Austrian law should govern the substantive claims under the Agency Agreement.

18. On January 22, 2014, the Panel issued a partial final award holding that a binding and enforceable Agency Agreement was entered into between OWL and TOS on July 1, 2005, that the arbitration clause formed an integral part of the Agency Agreement and that pursuant to the Choice of Law and Jurisdiction Clause, New York law as well as the Rules and Procedures of the SMA should apply and govern the arbitration.

19. The Parties made further submissions, conducted five (5) arbitration hearings with witnesses from OWL and TOS, and submitted closing legal memoranda to the Panel in support of the parties' claims and counterclaims under the Agency Agreement.

20. In particular, OWL and TOS witnesses testified as to their respective claims and counterclaims for termination of the Agency Agreement including TOS's failure to pay accounts owed to TOS within 60 days under Clause 5 of the Agency Agreement. TOS contended that the parties had waived the 60 day payment requirement by their course of dealing, and that OWL had wrongfully terminated the Agency Agreement claiming a loss of profits to TOS in the amount of $140,000.

21. In the Final Award, the panel rejected TOS's arguments and evidence on "wrongful termination" by OWL and held the following:

> After considering all arguments and evidence, the panel unanimously reaches the following decisions: Clause 5; Settlement. It is our decision that OWL was within its contractual rights to cancel the Agreement [Agency Agreement] under this particular clause. We have duly considered the arguments concerning prior conduct and the various legal and arbitral decisions referenced as well as the reliance on New York rule, i.e. parole evidence rule.

5

22.     The Panel further ruled as follows at page 24 of the Final Award: "In summary, the panel unanimously finds that TOS breached the 60-day provision in Clause 5 and that OWL's termination of the Agreement, pursuant to Clause 10, was valid."

23.     With respect to TOS's counterclaims in the arbitration for wrongful termination by OWL and loss of profits, the Panel held at page 25: "The damages claimed by TOS have been presented as a loss of profits claim, which was based upon OWL's alleged wrongful termination of the Agreement. TOS demanded $140,000, which roughly represented TOS's loss of profit for 60 days. This amount of $140,000 was obtained using TOS's average monthly profit for 12 months prior to November 11, 2012 termination notice. Since the panel held that there was no wrongful termination, TOS's claim fails."

24.     OWL proceeded to file enforcement proceedings on the Final Award in Austria against TOS to recover the amounts due and owing on the Final Award.

**Austrian Court Proceedings**

25.     Notwithstanding its binding agreement to arbitrate disputes in New York, TOS filed a lawsuit on March 8, 2013 with the Vienna Commercial Court seeking compensation under Austrian law of €250,000 plus costs and expenses based on OWL's wrongful termination of the Agency Agreement.

26.     After working its way through the Austrian courts, a foreign judgment issued dated June 29, 2018 in favor of TOS from the Vienna Commercial Court which ordered that OWL pay €250,000 plus 8% interest above the base rate since January 1, 2013 plus €25,316.70 for costs (the "Austrian Judgment") within 14 days. Totaling €399,122.59 or $451,408.78.

27. On November 29, 2018, OWL received a letter from TOS's counsel with a certified copy of the Austrian Judgment and a demand for €399,122.59, due within two (2) days, failing which Austrian Judgment would be enforced.

28. According to the certified translation of the Austrian Judgment received from TOS's counsel, the Vienna Commercial Court ignored the binding Final Award determinations on (1) breach by TOS of the Agency Agreement and (2) valid termination by OWL in accordance with the terms of the Agency Agreement because:

> [I]n the arbitration proceedings the Defendant (as the claimant in that arbitration) asserted a claim for compensation against the Claimant (as the defendant in that arbitration) where, among other things, a breach of contract by the claimant was concluded – though ultimately only on the basis of acknowledgment by the Claimant. In the present proceedings, the Claimant is seeking entitlement to compensatory adjustment pursuant to § 24 HVertrG. As this request does not constitute the conceptual opposite of the legally enforceable claim, the prejudicial effect of the judgment in the arbitration proceedings cannot be assumed, hence the question of whether the Claimant has violated provisions of the commercial agency contract dated July 1, 2005 can be re-assessed in the present proceedings.

29. The Austrian court wrongly concluded that the Final Award liability findings against TOS were on "the basis of acknowledgment," and were not final and binding determinations against TOS under the Agency Agreement.

30. The Austrian Court then proceeded to re-litigate the breach and termination issues of the Agency Agreement which had already been finally determined between OWL and TOS as set forth in the Final Award. In addition, the Austrian Court heard evidence only from TOS witnesses (OWL's President and CEO Robert Noonan's testimony was excluded and he was not questioned) on the 60 day payment requirement in Clause 5. TOS's witnesses provided testimony and evidence, which directly contradicted the testimony and evidence presented in the arbitration in New York resulting in the Final Award.

31. Based on the self-serving testimony of TOS's witnesses, and contrary to the Final Award, the Austrian Court found that OWL and TOS had not adhered to the 60 day payment requirement of Clause 5 of the Agency Agreement, and that OWL had implicitly waived the Clause 5 provision for payment within 60 days:

> While the parties cannot deviate from a form proviso unilaterally, they can do so by mutual agreement, even without adhering to the written form and not only explicitly but also by implication. In the present case, both parties to the dispute deviated by implication from Point [Clause] 5 of the contract, hence the 60 day period was not effectively agreed between the parties. Instead, payment periods of around four months were common, hence the Claimant cannot be accused of violating the commercial agency contract on this point and therefore the prerequisites for premature dissolution by the Defendant pursuant to 22 (2)(2) HVertrG are not fulfilled.

32. On the bases of an incomplete record and misleading testimony presented by TOS, the Austrian Court concluded that OWL's termination of the Agency Agreement was not valid, and therefore TOS was entitled to compensation under Austrian law for wrongful termination.

33. The conclusions and findings by the Austrian Court embodied in the Austrian Judgment are directly contrary to and specifically undermine the final and binding rulings of the Panel which formed the basis for liability of TOS in the Final Award in favor of OWL. Moreover, TOS's action in the Austrian Courts directly contravenes the parties' agreement to arbitrate disputes under the Agency Agreement under New York law.

**FIRST CLAIM FOR RELIEF**
**(Confirmation of the Final Award Pursuant to 9 U.S.C. § 207)**

34. Plaintiff repeats and realleges each and every allegation set forth in the proceeding paragraphs 1-33 as if fully set forth herein.

35. The United States is a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), which has been codified in Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et. seq.*

36. The New York Convention applies to this Award, which was issued by the Society of Maritime Arbitrators, Inc., in New York pursuant to a commercial arbitral agreement, which was international in nature.

37. The Final Award was obtained pursuant to the Agency Agreement after extensive hearings, and a partial final award confirming jurisdiction of the arbitrators and application of New York law to the parties' claims under the Agency Agreement.

38. The Final Award was issued in favor of OWL and against TOS in that the Panel unanimously found that TOS had breached the 60-day provision in Clause 5, and that OWL's termination of the Agency Agreement pursuant to Clause 10 was valid. The Final Award was and is binding on the parties.

39. Plaintiff is thus entitled to confirmation of the Final Award, and entry of judgment against TOS in accordance therewith.

### SECOND CLAIM FOR RELIEF
### (Request for Declaratory Judgment)

40. Plaintiff repeats and realleges each and every allegation set forth in the proceeding paragraphs 1-39 as if fully set forth herein.

41. In view of the conflict between the ruling by the Panel in the Final Award as to (1) breach by TOS of the Agency Agreement, (2) violation of the Clause 5 sixty (60) day payment provision, (3) validity of OWL's termination of the Agency Agreement pursuant to Clause 10, and (4) rejection of TOS's wrongful termination claim and the subsequent inconsistent and improperly issued Austrian Judgment concerning the same finally litigated

9

issues, OWL and TOS have an actual and substantial controversy concerning the determination of their contractual rights under the Agency Agreement.

42. TOS has demanded payment of the Austrian Judgment from OWL by letter dated November 29, 2018. TOS has also sought to enforce the Austrian Judgment by serving garnishment notices to the agency office of XPO Logistics in the Netherlands.

43. In threatening to enforce the Austrian Judgment in New York and other worldwide jurisdictions, TOS has wrongfully asserted entitlement to compensation notwithstanding the Final Award in favor of OWL.

44. Unless TOS is restrained, OWL will suffer irreparable harm including:

(a) the denial of its contractual rights to have liability issues under the Agency Agreement determined by the final and binding arbitration award rendered in New York;

(b) exposure to the risk of enforcement of the improperly obtained Austrian judgement;

(c) exposure to inconsistent judgments from the Final Award and Austrian Judgement with the potential of being required to pay the Austrian judgment notwithstanding the Final Award from the NY arbitration;

(d) exposure to other risks and expenses from the inconsistent findings of the Final Award and the Austrian judgment.

45. Declaratory relief will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

### THIRD CLAIM FOR RELIEF
**(Request for Injunction)**

46. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-45 as if fully set for the herein.

47. OWL is being injured by TOS's attempt to circumvent the binding effect of the Final Award issued in the New York Arbitration.

48. OWL will be irreparably harmed if an injunction does not issue enjoining TOS from seeking recognition and enforcement of the Austrian Judgment in New York and other worldwide jurisdictions.

49. Plaintiff's claim for relief is ripe.

50. Plaintiff asserts that if not enjoined by this Court, TOS will continue to ignore the binding Final Award and seek recognition and enforcement of the Austrian Judgment in New York and other worldwide jurisdictions.

51. Accordingly, injunctive relief is appropriate.

**WHEREFORE,** OWL respectfully prays that this Court enter an Order confirming the Final Award, enter judgment in accordance with that Final Award, and enjoin Respondent from seeking recognition and/or enforcement of the Austrian Judgment and such other and further relief as this Honorable Court may consider just and proper.

Dated: New York, New York
       January 2, 2019

Respectfully submitted,

By: _____
Vincent J. Foley
Clayton J. Vignocchi
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
Email: vincent.foley@hklaw.com
          clayton.vignocchi@hklaw.com

*Counsel for Ocean World Lines, Inc.*

## VERIFICATION

State of New York )
                              ) ss.:
County of New York )

       My name is Vincent J. Foley. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein. I am a partner in the firm of Holland & Knight LLP, attorneys for the Petitioner. I have read the foregoing Verified Petition and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief. The reason why this Verification is not being made by the Petitioner is that the Petitioner is a business organization with no officers or directors presently within the District. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from the Petitioner and agents and/or representatives of the Petitioner. I am authorized to make this Verification on behalf of the Petitioner.

Dated: New York, New York
        January 2, 2019

_____
Vincent J. Foley

Subscribed and Sworn to
Before me this 2 day of
January 2019

_____
Notary Public

ELVIN RAMOS
Notary Public, State of New York
No. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2022

12

#62354790_v1