UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OCEAN WORLD LINES, INC.,

                    Petitioner,

-against-

TRANSOCEAN SHIPPING
TRANSPORTAGENTUR GESMBH,

                    Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/16/2020

19 Civ. 43 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Ocean World Lines, Inc. ("OWL"), a New York corporation, filed a petition to enforce an arbitral award handed down by the Society of Maritime Arbitrators, Inc. ("SMA") for breach of an agency contract by Respondent, Transocean Shipping Transportagentur GesmbH ("TOS"), an Austrian corporation. Petition, ECF No. 1. OWL seeks three forms of relief: (1) confirmation of the award as a judicially enforceable order, *id.* ¶¶ 34–39; (2) an injunction preventing TOS from enforcing an Austrian judgment against OWL, and an order declaring the judgment invalid, *id.* ¶¶ 40–51; and (3) attorney's fees, Pl. Mem. at 19–20, ECF No. 11. For the reasons stated below, the petition to enforce the arbitration award is GRANTED, but the requests for an anti-suit injunction and for attorney's fees are DENIED.

## BACKGROUND[1]

OWL and TOS executed a commercial agency agreement in 2009 (the "Agreement"), pursuant to which TOS served as an agent for OWL in Austria. Petition ¶ 9; *see* Agreement, ECF No. 10-1. Clause 5 of the Agreement stated that money owed by TOS to OWL had to be paid within 60 days. Petition ¶ 10; Agreement ¶ 5. Clause 16 required any claim or action under

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the Petition, OWL's Rule 56.1 statement of undisputed fact and TOS's counterstatement, and the parties' declarations. Facts in dispute are so noted. Citations to a paragraph in TOS's Rule 56.1 counterstatement include both OWL's original statement and TOS's response.

the Agreement to be resolved in New York by a panel of SMA arbitrators under New York law and the SMA's rules. Petition ¶ 11; Agreement ¶ 16. Despite the text in Clause 5, OWL and TOS conducted their operations relatively informally, with TOS often not paying OWL by the 60-day deadline. 56.1 Statement ¶ 11, ECF No. 18; *see* Final Award at 19–20, ECF No. 10-2.

This course of dealing continued without issue until 2012, when the relationship between the parties deteriorated. In 2012, OWL sought to enforce Clause 5 in order to bring any debts owed by TOS current within 60 days. Final Award at 16–17. OWL alleges that TOS failed to do so, which prompted OWL to terminate the Agreement. Petition ¶ 15; 56.1 Statement ¶ 3. TOS disputes this, arguing that OWL's cancellation of the Agreement was premature. *Id.*

Arbitration proceedings began in 2013, when a panel of three arbitrators was appointed. 56.1 Statement ¶ 5; Final Award at 3. The panel issued a partial final award in January 2014, finding that the Agreement and the arbitration stipulation in Clause 16 were binding. 56.1 Statement ¶ 6; Partial Final Award at 9–10, ECF No. 10-3. In January 2016 the panel issued a final award in favor of OWL. 56.1 Statement ¶ 7; Final Award at 24. The final award held that OWL had validly terminated the Agreement due to TOS's breach of Clause 5, and awarded OWL $192,304.39, including attorney's fees, interest and costs. Final Award at 27–28.

OWL then sought to enforce the arbitration award in Austrian court. 56.1 Statement ¶ 15. However, separate litigation between the parties had already been proceeding on a parallel track in Austria. In 2013, TOS sued OWL in the Vienna Commercial Court ("VCC") under Austria's Commercial Agency Act. *See* Austrian Judgment at 2, ECF No. 10-4. Section 24 of that statute entitles an agent to compensation when a principal terminates an agency agreement, provided certain conditions are met. Handelsvertretergesetz [HvertrG] [Federal Law Concerning the Legal Relations of Self Employed Commercial Representatives] No. 88/1993, as amended, § 24,

https://www.ris.bka.gv.at/Dokumente/Erv/ERV_1993_88/ERV_1993_88.html (Austria).  The VCC initially "rejected" the suit in light of the ongoing arbitration proceedings.  Austrian Judgment at 3.  But that decision was appealed and eventually reached the Austrian Supreme Court, which held that the arbitration agreement was not valid to the extent that it prevented TOS from bringing claims in Austrian courts under the Commercial Agency Act.  *Id.* at 4; *see also* Austrian Supreme Court Op. at 2, 10, ECF No. 17-4.  The case was remanded to the VCC, which held a trial on TOS's claims under the Commercial Agency Act, and determined that TOS was entitled to recover €250,000 (the "Austrian Judgment").  Austrian Judgment at 1; Schlögl Decl. ¶¶ 15–24.  In late 2018, TOS moved to enforce the Austrian Judgment, demanding payment from OWL and serving a garnishment notice on a company in the Netherlands seeking to restrain funds held for the benefit of OWL.  56.1 Statement ¶¶ 27–28.

**ANALYSIS**

I.    Confirmation of the SMA Final Award

OWL seeks an order confirming the SMA's arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), codified as part of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208.  Petition ¶¶ 34–39; Pet. Mem. at 7–11; *see KT Corp. v. ABS Holdings, Ltd.*, 784 F. App'x 21, 24 (2d Cir. 2019) ("[T]he FAA expressly incorporates the terms of the New York Convention."), *cert. denied*, No. 19-761, 2020 WL 871759 (U.S. Feb. 24, 2020).  Under 9 U.S.C. § 207, when presented with "an arbitral award falling under the [New York Convention]," the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

"[A]ctions or proceedings that fall under the New York Convention include arbitration agreements or arbitral awards arising out of a legal relationship, whether contractual or not, which is considered as commercial between any parties, *unless* both parties are citizens of the United States *and* that relationship involves neither property located abroad, nor envisages performance or enforcement abroad, nor has some other reasonable relation with one or more foreign states." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (citing 9 U.S.C. § 203) (internal quotation marks and alterations omitted).

This action is governed by the New York Convention. It concerns an arbitral award arising from a commercial contract, and one of the parties, TOS, is a foreign entity. *See* Petition ¶¶ 4–6; Partial Final Award at 9–10. TOS does not dispute that the award falls under the terms of the New York Convention, or that it is valid and enforceable. *See generally* Resp. Opp. at 4–21, ECF No. 16.

As a result, the Court must confirm the arbitral award unless one of the defenses outlined by the New York Convention applies. "Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Comm'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (internal quotation marks and citation omitted); *see id.* at 405 n.4 (collecting defenses to enforcement). "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). Those seven defenses are:

>  (a) The parties to the agreement were under some incapacity, or the said agreement is not valid under the law; or

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made . . .
> [or] [t]he subject matter of the difference is not capable of settlement by arbitration, or if recognition or enforcement of the award would be contrary to the public policy of the country in which enforcement or recognition is sought.

*BSH Hausgerate GmbH v. Kamhi*, 291 F. Supp. 3d 437, 440 (S.D.N.Y. 2018) (internal quotation marks, citations, and alterations omitted).

TOS has not demonstrated that any of these defenses apply here. There is also no reason to believe that the award was made in "manifest disregard of the law." *Telenor*, 584 F.3d at 407. The panel plainly applied the law in deciding that OWL was within its contractual rights to cancel the Agreement due to TOS's failure to comply with OWL's demand that TOS bring its accounts current. Final Award at 19.

Accordingly, the petition to confirm the award is GRANTED.[2]

---

[2] It appears that TOS has already paid the full amount of the arbitration award to OWL. Schlögl Decl. ¶ 10, ECF No. 17; Austrian Judgment at 3, ECF No. 10-4. However, "prior compliance should [not] serve as a ground for refusal to confirm an arbitration award," and [a]t the confirmation stage, the court is not required to consider the subsequent question of compliance." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *see also* Restatement (Third) U.S. Law of Int'l Comm. Arb. § 5.25 TD No 1 (2010) ("[I]n confirming an award, the court does not consider "the subsequent question of compliance"—i.e., whether in fact the losing party has already satisfied the award.").

II. <u>Anti-Suit Injunction</u>

OWL asks this Court to issue a judgment declaring that the Austrian Judgment is not enforceable, and enjoining TOS from seeking to enforce it. Petition ¶¶ 40–51; Pet. Mem. at 12–19.

To establish that the Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, a "plaintiff must demonstrate that the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 550 (S.D.N.Y. 2012) (internal quotation marks and citation omitted), *aff'd*, 718 F.3d 1350 (Fed. Cir. 2013). OWL satisfies that standard, because it alleges TOS seeks to collect damages from it based on a court judgment that is inconsistent with, and barred by, the arbitration award. Petition ¶¶ 41–44. Of course, OWL must show that it is entitled to the substantive relief sought—here, that the Austrian Judgment is invalid in light of the arbitration award.

Under the test first articulated by the Second Circuit in *China Trade and Development Corp. v. M.V. Choong Yong*, "[a]n anti-suit injunction against foreign litigation may be imposed only if: '(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (quoting *China Trade*, 837 F.2d 33, 35 (2d Cir. 1987)). If those threshold requirements are met, then courts must consider a number of additional factors in determining whether an injunction is justified including "whether the parallel litigation would: (1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; (4) prejudice

other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Id.* (citation and alterations omitted).

The *China Trade* test applies, however, only "where the same parties attempt to litigate the same underlying dispute in multiple fora, often in a so-called 'race for res judicata.'" *Chevron Corp. v. Naranjo*, 667 F.3d 232, 243 (2d Cir. 2012) (internal quotation marks and citation omitted). By contrast, where a foreign court has already rendered a judgment, and a party seeks an injunction preventing that judgment's enforcement, what is sought is not an anti-suit injunction but "an *anti-enforcement* injunction." *Id.* "The factors discussed in *China Trade* therefore do not apply." *Id.* In *Naranjo*, the parties engaged in litigation in Ecuador, which resulted in a judgment against Chevron. *Id.* at 236. Chevron then sought to enjoin defendants from enforcing their foreign judgment in the United States, relying on New York's Uniform Foreign Country Money–Judgments Recognition Act (the "Recognition Act"), N.Y. C.P.L.R. §§ 5301–5309. *Id.* The Second Circuit held that the Recognition Act only sets out rules for the enforcement of a foreign judgment in New York, and may not be "used by judgment-debtors as a procedural lever to seek affirmative invalidation of foreign judgments before their enforcement is sought." *Naranjo*, 667 F.3d at 241. After analyzing the text of the New York statute, the circuit court explained that "[c]onsiderations of international comity provide additional reasons to conclude that" an anti-enforcement injunction was not available. *Id.* at 242. Such an injunction threatens international comity because:

> when a court in one country attempts to preclude the courts of every other nation from ever considering the effect of that foreign judgment, the comity concerns become far graver. In such an instance, the court risks disrespecting the legal system not only of the country in which the judgment was issued, but also those of other countries, who are inherently assumed insufficiently trustworthy to recognize what is asserted to be the extreme incapacity of the legal system from which the judgment emanates. The court presuming to issue such an injunction

7

sets itself up as the definitive international arbiter of the fairness and integrity of the world's legal systems.

*Id.* at 244. Applying that reasoning, at least one other court in this district has declined to issue a declaration nullifying a foreign judgment, or an injunction prohibiting its enforcement. *See, e.g.*, *Jill Stuart Asia LLC v. LG Fashion Corp.*, No. 18 Civ. 3786, 2019 WL 4450631, at *3–4 (S.D.N.Y. Sept. 17, 2019) (denying a global injunction against a Korean judgment on the grounds of international comity).

OWL seeks a declaration and injunction under the New York Convention and the FAA, rather than under the Recognition Act. Reply at 1–2, ECF No. 23. OWL argues that the Convention and FAA authorize an injunction because the Austrian Judgment threatened this Court's power to enforce the arbitration award. Pet. Mem. at 13–14. OWL contends, therefore, that the injunction it requests implicates the same factors as an anti-suit injunction, and the Court should apply the *China Trade* test. But the concerns raised by OWL's request are much more similar to those implicated by the anti-enforcement injunction sought in *Naranjo*, and similarly counsel against granting relief here. The Austrian court was aware of the arbitration award, and determined that it did not preclude a judgment for TOS under Austrian and European Union law. Austrian Judgment at 12–13. Indeed, that question was resolved by the Austrian Supreme Court, which held that the Agreement was unenforceable to the extent that it prevented TOS from pursuing its Austrian law claims. Austrian Supreme Court Op. at 2.

It would not be appropriate for this Court to rely on the New York Convention and FAA to invalidate the holding of the VCC, much less the Austrian Supreme Court. For this Court to hold that the Austrian courts were mistaken, and effectively nullify their holdings in favor of OWL's proposed interpretation of the arbitration award, "risks disrespecting the legal system not only of the country in which the judgment was issued, but also those of other countries, who are

8

inherently assumed insufficiently trustworthy to recognize what is asserted to be the extreme incapacity of the legal system from which the judgment emanates." *Naranjo*, 667 F.3d at 244; *cf. China Trade*, 837 F.2d at 35 ("The fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, because such an order effectively restricts the jurisdiction of the court of a foreign sovereign." (citing *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625 (1849)). Nothing in the New York Convention or the FAA empowers this Court to review and invalidate the decisions of courts in another sovereign nation. To the contrary, the Second Circuit has expressly warned against a court setting itself up as "the definitive international arbiter of the fairness and integrity of the world's legal systems." *Naranjo*, 667 F.3d at 244.

Accordingly, OWL's request for a declaration that the Austrian Judgment is inconsistent with the arbitral award and an injunction barring enforcement of the Austrian Judgment is DENIED.

III. Attorney's Fees

OWL seeks an award of attorney's fees under the Court's "inherent powers to supervise and control its own proceedings." *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000); *see* Pet. Mem. at 19. "[A] district court has the authority to award attorney's fees to the prevailing party when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* In "suits for the confirmation and enforcement of arbitration awards . . . when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded" under that authority. *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir. 1985) (internal quotation marks and citation omitted); *see In re Arbitration Between Westchester Fire Ins. Co. v.*

9

*Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 228 (S.D.N.Y. 2005) (discussing circumstances permitting an award of fees in deciding a petition to confirm an arbitration award under the FAA).

OWL is not entitled to an award of attorney's fees for two reasons. First, OWL is not the "prevailing party" with respect to the conduct it claims was vexatious and in bad faith—TOS's litigation in Austrian courts. The Court has held that OWL is not entitled to a declaration that the Austrian court's judgment is unenforceable or an injunction barring its enforcement. Second, TOS did not disregard the SMA panel's judgment, or otherwise act improperly, in bringing the Austrian action. The panel had not yet reached a judgment when TOS initiated its Austrian case—and, as the Austrian Supreme Court ultimately held, the two proceedings did not concern the same claims. The litigation, therefore, was not vexatious, wanton, or oppressive. *Eisemann*, 204 F.3d at 395.

Accordingly, OWL's request for an award of attorney's fees is DENIED.

## CONCLUSION

For the reasons stated above, the petition to confirm the arbitration award is GRANTED, but OWL's request for an anti-suit injunction and its motion for attorney's fees are DENIED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: June 16, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge